Bradley M. Strassberg (7994)
George Hofmann (10005)
Jeffrey Trousdale (14814)
**Cohne Kinghorn, P.C.**
111 East Broadway, 11th Floor
Salt Lake City, UT 84111
Telephone: (801) 363-4300
Facsimile: (801) 363-4378

Attorneys for Kenneth Rushton,
Chapter 7 Trustee

# IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| In re<br><br>THRIVE NATIONAL CORP, and THRIVE SYSTEMS, INC.,<br><br>Debtors. | Bankruptcy No. 16-26526 (KRA)<br><br>Chapter 7<br><br>(Substantively Consolidated) |
| KENNETH RUSHTON, in his capacity as Chapter 7 Trustee of the Consolidated Estates of Thrive National Corp. and Thrive Systems, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>PAUL SHIRLEY, BROOKE SHIRLEY, AMY HALL and MAITON, LLC<br><br>Defendants. | Adv. Pro. No. 18- |

## COMPLAINT

1.  Kenneth Rushton (the "Trustee"), the duly appointed Chapter 7 trustee for

Thrive National Corp. ("TNC") and Thrive Systems, Inc. ("TSI,") (collectively the

{00394410.DOCX /}

"Debtors"), brings this action through counsel against Paul Shirley ("Paul"), Brooke Shirley ("Brooke," and together with Paul, the "Shirleys"), Amy Hall ("Amy Hall") and Maiton, LLC ("Maiton," and together with the Shirleys, the "Defendants"), and for causes of action, alleges as follows:

## NATURE OF THE CASE

2.	This Complaint seeks to avoid and recover from the Defendants, or from any other person or entity for whose benefit the transfers were made, all avoidable transfers of property made to or for the benefit of the Defendants by the Debtors before and after the TNC Petition Date (defined below) under Bankruptcy Code §§ 362, 363, 544, 547, 548, 549 and 550.  To the extent that the Defendants have filed proofs of claim or have claims listed on the Debtors' schedules as undisputed, liquidated, and not contingent, or have otherwise requested payment from the Debtors or the Debtors' substantively consolidated estate (collectively, the "Claims"), this Complaint is not intended to be, nor should it be construed as, a waiver of the Trustee's right to object to such Claims for any reason, including, but not limited to, Bankruptcy Code § 502(a) through (j) ("Section 502"), and such rights are expressly reserved.  Notwithstanding this reservation of rights, certain relief pursuant to Section 502 is sought by the Trustee in this Complaint as stated below.

## PARTIES, JURISDICTION AND VENUE

3.	Kenneth Rushton is the Chapter 7 Trustee (the "Trustee") for Thrive National Corp. ("TNC") and Thrive Systems, Inc. ("TSI"), together referred to as the "Debtors").

4. Defendant Paul Shirley is a resident of Utah who formerly resided in Washington State.

5. Defendant Brooke Shirley is a resident of Utah who formerly resided in Washington State.

6. The Shirleys are the sister-in-law and brother-in-law of Bailey Hall ("Hall").

7. Amy Hall is a resident of Utah, and Hall's spouse.

8. Defendant Maiton, LLC, is a Nevada limited liability company managed by Jason Yancey ("Yancey").

9. Yancey is, or was, Hall's personal attorney.

10. On information and belief, Maiton is (or was) also subject to Hall's control and management.

11. Each of the Defendants are insiders of the Debtor.

12. TNC commenced its bankruptcy case by filing a voluntary Chapter 11 petition on July 27, 2016 (the "TNC Petition Date").

13. On October 24, 2016, the TNC bankruptcy case was converted a case under Chapter 7 of the Bankruptcy Code, and George Hofmann was appointed as the Chapter 7 Trustee (the "Former Trustee").

14. After the Former Trustee resigned, the Trustee was appointed on August 18, 2017.

15. TSI is a Delaware corporation formerly doing business in Utah.

16. On February 28, 2018 (the "TSI Petition Date"), TSI filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code (the "TSI Petition").

17. The Trustee was appointed as the Chapter 7 Trustee for TSI.

18. The Trustee is presently acting to liquidate the Debtors' assets for the benefit of creditors.

19. Each of the cases recited above were ordered substantively consolidated on a *nunc pro tunc* basis, as set forth in the *Stipulated Order Granting in Part Trustee's Motion for Limited Substantive Consolidation and Joint Administration*, entered by the Court on May 21, 2018 (the "Substantive Consolidation Order") [Consolidated Docket No. 147].

20. The Substantive Consolidation Order provides, in part, that the TNC Petition Date may serve as the "Effective Date" for the purpose of determining the "lookback period" under Bankruptcy Code §§ 544, 547, and 548.

21. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

22. Venue is proper pursuant to 28 U.S.C. §§ 1408 and/or 1409.

23. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## GENERAL ALLEGATIONS

24. The Trustee realleges and incorporates herein by this reference each of the preceding and subsequent paragraphs of this Complaint.

25. Prior to filing bankruptcy, the Debtors were primarily in the business of providing billing, payment processing, and collection services (collectively, the "Billing Services") to health clubs and gyms across the country (the "Gym Clients").

26. More specifically, the Billing Services included collecting all of the payments that were owed to the Gym Clients by their own clients, retaining a small

portion of the payments as a commission (usually approximately 6%), and remitting the rest of the funds back to the Gym Clients.

27. In the years prior to the TNC Petition Date, Hall directed the Debtors to stop remitting funds back to the Gym Clients, either in whole or in part, and would use the funds that the Debtors kept (the "Unremitted Funds") to fund his personal lifestyle and to funds the business of other entities he owned or controlled.

28. Outside of the Debtors (primarily TSI), Hall's other entities were not self-supporting or income earning.

29. TSI was primarily responsible for overseeing and operating the Billing Services, while TNC "owned" most of the assets—including a 100% interest in TSI—which were used for the Billing Services.

30. TNC is the 100% owner of TSI.

31. Hall incorporated TNC and TSI with the State of Delaware on December 18, 2009. TNC and TSI were registered as foreign corporations with the State of Utah on March 10, 2010.

32. The Debtors had multiple prepetition creditors, including trade creditors, the Gym Clients, and various taxing authorities.

33. For example, the Internal Revenue Service has filed a claim against the Debtors (Claim No. 1-1 in the TNC Case) in the amount $16,419.26, and including tax obligations dating back to 2012.

34. Talmadge & Talmadge, Inc. has filed a claim against the Debtors (Claim No. 21-1) in the amount of $75,000 for amounts owing since 2014.

35. On information and belief, there may be more Gym Clients and other creditors whom the Trustee has not yet identified or discovered.

I. **Payroll and Fraudulent Payments**

36. Hall had unfettered access to and exercised significant, if not complete, control over the Debtors' payroll and other bank accounts.

37. On information and belief, Hall directed TSI to add the Shirleys and Amy Hall to the TSI's payroll.

38. For example, in 2015, TSI paid Brooke a salary of approximately $24,588.

39. On information and belief, Brooke was on TSI's payroll in the years preceding 2015.

40. Similarly, in 2015, TSI paid Amy Hall a salary of approximately $57,588.

41. On information and belief, Amy Hall was on TSI's payroll in the years preceding 2015.

42. On information and belief, Paul was also paid funds through the Debtors' payroll in the years prior to 2015 (together with all payroll amounts paid to Amy Hall and Brooke, including amounts yet to be discovered or specifically identified, the "Fraudulent Payroll Transfers").

43. Neither the Shirleys nor Amy Hall performed work for the Debtors or for the benefit of the Debtors.

44. In addition to paying Amy Hall and the Shirleys through the Debtors' payroll service, the Debtors paid the Shirleys through direct payments.

45. For example, the Debtors made, at a minimum, the following payments to Paul:

    (a)    August 5, 2015 – $3,000, Check No. 12553 from TSI's Zions Bank Operating Account;

    (b)    August 5, 2015 - $3,000, Check No. 12589 from TSI's Zions Bank Operating Account;

    (c)    March 21, 2016 - $3,000, Check No. 1183 from TSI's U.S. Bank Operating Account

(collectively, and including any other transfers from the Debtors directly to the Shirleys or Amy Hall, but not yet discovered or identified, the "Direct Transfers").

46.    Neither the Shirleys nor Amy Hall performed work for the Debtors or otherwise provided value to the Debtors in exchange for the Direct Transfers.

**II.    The Washington Home**

47.    Maiton owned real property located at 15833 Sunny Cove Dr. SE, Ollalla, Washington 98359 (the "Real Property").

48.    The Real Property is a lakeside home.

49.    On or about September 25, 2017, Maiton sold the Real Property for $675,000 (the "Real Property Proceeds").

50.    On information and belief, the Debtors funded the purchase and maintenance of the Real Property through transfers of funds to Maiton.

51.    For example, transfers of funds to Maiton included the following transfers from TSI's "Trust Account" at Zions Bank:

    (a)    March 31, 2014—$23,000;

    (b)    April 28, 2014—$10,500;

    (c)    May 27, 2014—$20,000;

(d)　　June 2, 2014—$19,000;

(e)　　July 7, 2014—$7,500;

(f)　　August 4, 2014—$25,000;

(g)　　October 6, 2014—$25,000;

(h)　　December 2, 2014—$25,000;

(i)　　February 2, 2015—$25,000;

(j)　　March 2, 2015—$25,000;

(k)　　April 3, 2015—$25,000;

(l)　　May 4, 2015—$26,000;

(m)　　June 2, 2015—$26,379.73;

(n)　　July 2, 2015—$26,379.73;

(o)　　August 6, 2015—$26,379.73;

(p)　　September 2, 2015—$24,033.37.

(collectively, the "Trust Account Transfers")

52.　　On October 13, 2015, TSI also issued a check to Maiton from its "Operating Account" at Zions Bank, in the amount $13,333.88, which Maiton cashed on October 15, 2015 (together with the Trust Account Transfers, the "Maiton Transfers").

53.　　In sum, between March of 2014 and October of 2015, the aforementioned Maiton Transfers totaled $372,506.44.

54.　　On information and belief, the Debtors made additional transfers of funds to Maiton.

55.　　Though TSI paid the Defendants substantial amounts of money, including but not limited to the Maiton Transfers, the Fraudulent Payroll Transfers, and the Direct

Transfers, it received little or no consideration in return and its funds have never been repaid.

56. The Debtors did not receive any of the Real Property Proceeds.

57. The Fraudulent Payroll Transfers, the Direct Transfers, and the Maiton Transfers were made with the actual intent to hinder, delay and defraud the Debtors' creditors, as evidenced by the allegations above, which establish:

(a) The Shirleys and Amy Hall are family members to Hall, and as such, are insiders of the Debtors;

(b) The Shirleys and Amy Hall knew, or should have known, that they were not entitled to be placed on the Debtors' payroll without providing services to the Debtors;

(c) Maiton is controlled by Hall and Yancey, and as such, is an insider of the Debtors;

(d) The Debtors became insolvent, in part, by virtue of the Transfers;

(e) The Transfers are part of a pattern of willful and fraudulent behavior, including making transfers to family members and insider entities with little regard for the Debtors' legitimate creditors.

58. Alternatively, these transfers were made at a time when Debtors were insolvent.

59. Unless otherwise specifically defined herein, reference to the "**Transfers**" (both preceding and subsequent to this paragraph) means and refers to all of the transfers of payment as described in this Complaint, including the Fraudulent Payroll Transfers, the Direct Transfers, the Maiton Transfers, and Transfers as are yet to be

discovered or identified in the Complaint.

## FIRST CAUSE OF ACTION
### (Fraudulent Transfers - 11 U.S.C. §§ 544 and 548 and Utah Code Ann. §§ 25-6-201 *et seq.*)

60. The Trustee realleges and incorporates herein by this reference each of the preceding and subsequent paragraphs of this Complaint.

61. This claim is asserted under authority of sections 544 and 548 of the Bankruptcy Code and sections 25-6-201 *et seq.* of the Utah Code.

62. Including but not limited to the four (4) years prior to the TNC Petition Date, the Debtors made several fraudulent transfers to the Defendants, including the aforementioned Transfers.

63. Little or no consideration was paid to or received by the Debtors in exchange for the Transfers.

64. The consideration received by the Debtors, if any, in exchange for the Transfers was not reasonably equivalent to the value of the Debtors' interest in the transferred assets at the time of the Transfers.

65. The Transfers were made by the Debtors with actual intent to hinder, delay or defraud creditors of the Debtors.

66. At the time of each of the Transfers, the Debtors (a) were insolvent, (b) were rendered insolvent, (c) were engaged in a business or transaction, or were about to engage in a business or transaction, for which any property remaining with the Debtors was unreasonably small capital, and/or (d) intended to incur, or believed that the Debtors would incur, debts that would be beyond the Debtors' ability to pay as such debts matured.

67. At the time of the Transfers, the transferred assets constituted a substantial amount of the Debtors' assets.

68. The Debtors were insolvent at the time of the Transfers or became insolvent on account of or within a short time after the Transfers.

69. At or around the time of the Transfers, the Debtors were being pursued or were about to be pursued by their creditors.

70. The Debtors had creditors whose claims arose before the Debtors made the Transfers.

71. The Trustee "stands in the shoes" of existing creditors of the Debtors, including but not limited to the Internal Revenue Service.

72. Wherefore, the Trustee is entitled to an order pursuant to 11 U.S.C. §§ 544 and 548 and Utah Code Ann. 25-6-201 *et seq.* avoiding the Transfers as fraudulent and avoidable.

73. By reason of the foregoing, and pursuant to Utah Code Ann. § 25-6-303, the Trustee is entitled to:

    (a) a judgment against the Defendants avoiding the Transfers;

    (b) an attachment or other provisional remedy against the Transfers, the Real Property Proceeds, or other property of the Defendants;

    (c) an injunction against the further disposition of the Transfers;

    (d) any other relief the circumstances may require.

74. During the course of this proceeding the Trustee may learn (through discovery or otherwise) of additional transfers made to the Defendant within (or before) four years before the Petition Date. It is the Trustee's intention to avoid and recover all

transfers made by the Debtor of an interest of the Debtor in property or transfers made by the Debtor for the benefit of the Defendant or any other transferee. The Trustee reserves his right to amend this Complaint to include (i) further information about the Transfers, (ii) information regarding additional transfers, (iii) revision of the Defendants' name(s), (iv) additional causes of action including, but not limited to, causes of action under sections 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code (collectively, the "Amendments"), that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to the filing of the original Complaint in this case.

## SECOND CAUSE OF ACTION
### (Transferee Liability – 11 U.S.C. § 550)

75. The Trustee realleges and incorporates herein by this reference each of the preceding and subsequent paragraphs of this Complaint.

76. The Defendants were (a) the initial transferee(s) of the Transfers, (b) the immediate or mediate transferee(s) of such initial transferee(s), or (c) the person for whose benefit the Transfers were made.

77. The Defendants had actual knowledge that the Transfers were fraudulent as to the Debtors, because, among other things, they were insiders of the Debtors and/or had a close relationship with Hall.

78. Wherefore, the Trustee, pursuant to Bankruptcy Code § 550, may recover from the Defendant the property transferred or, if the Court so orders, the value of such property.

### THIRD CAUSE OF ACTION
### (Disallowance of all Claims – Bankruptcy Code § 502(d) and (j))

79. The Trustee incorporates by reference all preceding paragraphs of this Complaint.

80. The Defendant received the Transfers, which are avoidable under Bankruptcy Code §§ 544 and 548.

81. The Defendant is the transferee from which property is recoverable under Bankruptcy Code § 550.

82. The Defendant has not paid the amount of the Transfers, or turned over such property, for which the Defendant is liable under Bankruptcy Code § 550.

83. Pursuant to Bankruptcy Code § 502, any and all Claims of the Defendant against the Debtors' consolidated estate must be disallowed until such time as the Defendant pays to the Trustee an amount equal to the amount of the Fraudulent Transfers, plus interest thereon and costs.

84. Pursuant to Bankruptcy Code § 502(j), any and all Claims of the Defendant, and/or its assignees, against the Debtors' consolidated estate previously allowed by the Debtors, must be reconsidered and disallowed until such time as the Defendant pays to the Trustee an amount equal to the aggregate amount of the Transfers, plus interest thereon and costs.

### FOURTH CAUSE OF ACTION
### (Turnover and Accounting of Property of the Estate under 11 U.S.C. § 542(a))

85. The Trustee incorporates by reference all preceding paragraphs of this Complaint.

86. Bankruptcy Code § 542(a) requires an entity in possession, custody or control of property that the Trustee may use to deliver to the Trustee and account for the property or the value of such property.

87. The Real Property Proceeds are property of the Debtors' bankruptcy estate pursuant to Bankruptcy Code § 541.

88. The Trustee demands turnover and an accounting of the Debtors' interest in the Real Property Proceeds and any and all other property (including the Transfers) held by the Defendants.

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

89. The Trustee incorporates by reference all preceding paragraphs of this Complaint.

90. Defendants received a benefit from the Debtors through the Transfers.

91. Defendants appreciated or had knowledge of the benefit.

92. The Debtors received no benefit or value in exchange for the Transfers.

93. It would be inequitable for Defendants to retain the benefit of the Transfers.

94. Accordingly, the Trustee is entitled to a judgment of restitution against the Defendants restoring the Debtors' consolidated bankruptcy estate to its position before the Transfers.

## SIXTH CAUSE OF ACTION
### (Constructive Trust)

95. The Trustee incorporates by reference all preceding paragraphs of this Complaint.

96. Any and all Transfers made to the Defendants were property of the Debtors, and were obtained from the Debtors as a result of the Debtors' or Hall's fraudulent scheme.

97. Allowing the Defendants to retain the Transfers would unjustly enrich the Defendants and would be inequitable to creditors in this case, including the Gym Clients who have suffered as a result of the Debtors' and Hall's wrongdoing.

98. The Transfers can be traced to the Debtors' and Hall's wrongful behavior.

99. An injustice would result if the Defendants were allowed to keep the Transfers.

100. The Trustee is entitled to the imposition of a constructive trust for the benefit of the substantively consolidated estate on the amount of all the Transfers paid to the Defendants.

**WHEREFORE**, the Trustee requests judgment against Defendants as follows:

1. Avoiding and recovering the Transfers or their value from Defendants.

2. Granting judgment in favor of the Trustee and against Defendants in an amount to be proven at trial, but in any event, no less than $57,588 against Amy; $33,588 against the Shirleys; and $675,000 against Maiton.

3. Requiring Defendants to immediately pay these amounts to the Trustee pursuant to Bankruptcy Code § 550.

4. Disallowing any Claims of the Defendants, and/or their assignees, if they refuses to turn over any Fraudulent Transfers to the Trustee pursuant to Bankruptcy Code § 502.

5. Granting a constructive trust to the Trustee on the amount of the Transfers

wrongfully paid to the Defendants.

6. Granting judgment against the Defendants for unjust enrichment and requiring the Defendants to disgorge the Transfers in an amount to be proven at trial, but in any event, no less than $57,588 against Amy; $33,588 against the Shirleys; and $675,000 against Maiton.

7. Awarding pre-judgment interest at the maximum legal rate pursuant to 28 U.S.C. § 1961 on the Transfers from 2012 (or such time to be identified as the date when the Transfers began) until the date of judgment.

8. Awarding post-judgment interest at the maximum legal rate pursuant to 28 U.S.C. § 1961 from the date of judgment until paid in full.

9. For any other relief the Court deems just and proper.

**DATED**: July 27, 2018

                            **COHNE KINGHORN, P.C.**

                            /s/ Jeffrey Trousdale
                            George B. Hofmann
                            Jeffrey L. Trousdale
                            Bradley M. Strassberg
                            Attorneys for the Trustee